ESTATE OF PAT E. HOOKS, DECEASED, JEANETTE HOOKS, INDEPENDENT EXECUTRIX, AND JEANETTE HOOKS, SURVIVING WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45676. Filed June 8, 1954.

*Edward L. Wilson, Esq.*, for the petitioners.
*J. L. Bailey, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax against petitioners in the amount of $3,825.36 for the calendar year 1950.

The sole issue for decision is the propriety of a claimed deduction of $13,103.81 representing interest on insurance policy cash and automatic premium loans which was unpaid up to the time of the husband's death, the policies having been purchased by the husband and the wife having been named therein as beneficiary.

All of the facts have been stipulated and are so found.

A summary of the facts will point up the issue.

Pat E. Hooks (hereafter called decedent) and petitioner, Jeanette Hooks, were husband and wife residing in Itasca, Texas. Decedent died on October 17, 1950. Jeanette became the duly qualified and acting independent executrix of his estate under his will and the laws of Texas. She filed a joint income tax return for 1950 on the cash

receipts basis in her individual capacity and as executrix with the collector of internal revenue for the first district of Texas. The return included Jeanette's income and deductions for the entire year of 1950 and those of decedent for the period January 1 through October 17, 1950.

During 1928 decedent purchased three term life insurance policies in the face amount of $25,000 each. In 1933 these policies were converted into three ordinary life policies in the same face amount which remained in force until decedent's death, at which time Jeanette was the designated beneficiary of each.

All of the premiums were paid from community funds.

Each policy provided that the insurer would loan money on the sole security of the policy with interest at 6 per cent per annum. Unpaid interest at the end of each policy year was to be added to the principal of the loan with the limitation that the total of the loan could not exceed the cash surrender value. It was further provided that "any indebtedness to the Company on account of or secured by this policy shall be deducted from any settlement hereunder." Each policy also provided that upon written request before default in premiums, the amount of any unpaid premiums

will automatically be loaned by the Company in payment of such premium and charged as an indebtedness secured by this policy, subject to interest at the rate of six per cent per annum as prescribed for loans, provided that the total indebtedness hereunder will then be within the loan value * * *

Pursuant to these provisions decedent obtained loans over a period of years, both cash and automatic premium, aggregating $19,235.61. On August 26, 1935, decedent executed three "loan agreements" in the form of promissory notes for the amounts borrowed up to that date, with interest at 6 per cent, secured by a pledge of the policies. During December 1948, three new loan agreements evidencing total indebtedness then outstanding and bearing 6 per cent interest secured by pledge of the policies were executed. All loans were made while decedent and Jeanette were married and residents of Texas.

At the date of decedent's death, October 17, 1950, the aggregate indebtedness on the policies totalled $32,339.42. This total included $13,103.81 interest accrued thereon. Interest ceased to accrue on October 17, 1950. Jeanette made claim for payment of the death benefits under the policies and on December 22, 1950, the insurer paid her the sum of $42,660.58 which represented the face amount of the policies less the loans and accrued interest.

In the joint return for 1950 a deduction for $13,103.81 was claimed as interest paid. This represented the amount of the interest subtracted by the insurer in determining the death benefits paid to Jeanette.

The entire amount of this deduction was disallowed by the Commissioner with the following explanation:

It was not deductible by decedent because it was not paid prior to his death. It was not a liability of the estate.

It was not your liability, nor did you as beneficiary of the policies receive "property of decedent subject to an obligation".

Therefore, it is held that the interest charged against the face of the policy to determine the proceeds to be received by you was deductible neither under section 23 (b) nor section 126 (b) (1) of the Internal Revenue Code and the amount is disallowd.

Sections 23 (b)[1] and 126 (b) (1)[2] of the Internal Revenue Code appear in the margin.

Petitioners, in substance, argue alternatively: (1) That payment of the interest was made simultaneously with the insured's death on October 17, 1950, when the insurance company became irrevocably entitled to a portion of the proceeds of the policies equal to the loans and interest which the policies secured, and so should be treated as having been paid within decedent's last taxable year and properly deductible on the return for that period; or (2) that the deduction was allowable to Jeanette under section 126 (b) (1) (B). Other contentions made by petitioners need not here be discussed.

On the first alternative, we do not understand the Commissioner's argument to be that the obligation was not interest, or, that being interest, it was not "paid." Rather, his argument is that the interest obligation, although concededly satisfied, was not "paid" within decedent's "taxable year" as required by section 23 (b) and so cannot be deducted in the return for his last taxable year.

The parties agree that decedent, being on a cash basis, would not have been entitled to a deduction for the interest during his lifetime, since during the time he was alive the interest was merely being added

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.

[2] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

* * * * * * *

(b) ALLOWANCE OF DEDUCTIONS AND CREDIT.—The amount of any deduction specified in section 23 (a), (b), (c), or (m) (relating to deductions for expenses, interest, taxes, and depletion) or credit specified in section 31 (foreign tax credit), in respect of a decedent which is not properly allowable to the decedent in respect of the taxable period in which falls the date of his death, or a prior period, shall be allowed:

(1) EXPENSES, INTEREST, AND TAXES.—In the case of a deduction specified in section 23 (a), (b), or (c) and a credit specified in section 31, in the taxable year when paid,—

(A) to the estate of the decedent; except that

(B) if the estate of the decedent is not liable to discharge the obligation to which the deduction or credit relates, to the person who, by reason of the death of the decedent or by bequest, devise, or inheritance acquires, subject to such obligation, from the decedent an interest in property of the decedent.

to the principal amount of the loans and so remained unpaid. This principle is supported by *Eckert* v. *Burnet*, 283 U. S. 140; *Nina Cornelia Prime*, 39 B. T. A. 487; and *Albert J. Alsberg*, 42 B. T. A. 61.

Petitioners readily concede that deductions are matters of legislative grace and that they must clearly bring themselves within the terms of the statute in order to be entitled thereto. Hence, for the interest to be deductible in decedent's last return it must be shown that it was paid within his last taxable year. This is difficult of accomplishment unless we seem to indulge in metaphysics, for, as pointed out above, decedent did not pay the interest while he was alive. It was only by reason of his death that the interest obligation can be said to have been met or "paid."

Nevertheless, the argument is made as follows. The insurance policies were held by the insurance company as security for the principal and interest of the loans pursuant to assignments made by decedent in his lifetime. Up to the moment of death the policies represented property owned by the decedent. At the moment of death the policies matured, their proceeds were charged with the interest, and at that moment the interest obligation was satisfied and extinguished. At least the loan itself was treated as paid, for the stipulated facts show that from the time of death interest ceased to accrue. If death brought about satisfaction of the principal obligation, we conclude that the interest obligation also ceased to exist, for from that moment the creditor had property in its hands from which it was bound by its agreement with the debtor to pay the interest. Affirmative action on the part of a debtor has been held not to be necessary in order to effect payment and the lack of any such act by decedent would not necessarily prevent a decision that payment of the interest was made, albeit simultaneously with death. *Kate Sherman Baker*, 18 T. C. 746. Accordingly, if we hold that the interest payment was effected at death, it would seem that we could take the next step and hold that a payment made simultaneously with death was actually made within the last taxable year of decedent and hence deductible in his last return.

But even if we were forced to conclude that the deduction is not properly allowable to the decedent in his last taxable period it does not follow that petitioners must lose. We have before us the joint return of decedent and his surviving wife, Jeanette, and the benefit of the interest deduction can be accorded the taxpayers equally as well if we are able to find that Jeanette can take the deduction. Petitioners suggest this would be possible under section 126 (b) (1) (B). This possibility is indeed available. From the legislative history of that section we gather that it was designed to provide a comprehensive scheme for taxing the income of decedents and for

allowing deductions with respect to such income.  It provides that the amount of an interest deduction "in respect of a decedent which is not properly allowable to the decedent in respect of the taxable period in which falls the date of his death," shall be allowed to his estate, except that if the estate is not liable to discharge the interest obligation, then the deduction shall be allowed "to the person who, by reason of the death of the decedent * * * acquires, subject to such obligation, from the decedent an interest in property of the decedent."

The parties agree that the estate is not liable to discharge the interest, relying upon *Annie S. Kennedy*, 4 B. T. A. 330.  This agreement leaves us with the question of whether Jeanette is a person who acquired property from the decedent by reason of his death, which property was subject to the interest obligation.  If she did, then she would be entitled to the deduction under the plain language of section 126 (b) (1) (B).

We think this is a tenable conclusion.  Surely Jeanette acquired an interest in property of the decedent, i. e., either in the insurance policies or a chose in action against the insurance company for the proceeds thereof (it makes no difference which) "by reason of the death of the decedent," as required by the statute.  And surely that property was "subject" to the obligation of satisfying the interest charges on the loans which the policies were pledged to secure, since under the terms of the policies she could collect only the face amount less the principal and interest on the loans which the policies secured.

The Commissioner argues, nevertheless, that Jeanette cannot have the deduction because the interest was not her obligation and because she did not in fact pay it.  But the answer to that is that section 126 (b) (1) (B) contains no requirement that the obligation be hers or that actual payment be made by her.  The statute allows the deduction simply to the person who by reason of decedent's death acquires property of the decedent subject to the obligation to which the deduction relates.  We think Jeanette can reasonably be said to be such a person, and, as pointed out above, we do not understand the Commissioner to argue that the interest was not "paid."  If we misunderstand his argument, we hold that the interest was paid either at the time of decedent's death or no later than December 22, 1950, the date when the insurance company paid Jeanette the face amount of the policies less the loans and accrued interest.

As indicated above, the way this case arises makes it unnecessary for us to choose under which section—23 (b) or 126 (b) (1) (B)—to allow the deduction.  A joint return is here involved and it makes no difference to the taxpayers which section is called into play.  In other situations for instance, if the beneficiary of the policies had been a collateral relative of decedent, a stranger, or his business associate

we would have to choose. Not being required to make a choice, we make none, and postpone that decision until a proper case arises.

For present purposes we hold that the interest deduction is proper in the joint return filed by Jeanette as independent executrix of her husband's estate and in her individual capacity.

Reviewed by the Court.

*Decision will be entered for the petitioners.*