*Decision will be entered under Rule 50.*

W. STUART EMMONS, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61021. Filed October 10, 1958.

*Bruce S. Cronlund, Esq.*, for the petitioner.
*William F. Fallon, Esq.*, for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in the income tax of petitioner and additions thereto as follows:

| Year | Deficiency | Additions | |
|------|-----------|-----------|-----------|
| | | Sec. 294 (d) (2) | Sec. 294 (d) (1) (A) |
| 1951 | $6,651.57 | $275.54 | $459.24 |
| 1952 | 5,292.91 | 243.21 | 405.35 |

The sole issue is whether respondent erred in determining that certain payments in 1951 and 1952 of, respectively, $13,627.30 and $9,699.64, are not deductible as interest paid within the purview of section 23 (b) of the Internal Revenue Code of 1939.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioner is an individual residing in Haverford, Pennsylvania. His individual income tax returns for the calendar years 1951 and 1952 were filed on the cash basis with the director (formerly the collector) of internal revenue at Philadelphia. The notice of deficiency was mailed to petitioner on November 21, 1955.

In 1951 petitioner purchased from Standard Life Insurance Company of Indiana (hereinafter called the company) an annual premium annuity policy. Forty-one annual premium payments were required, each in the amount of $2,500. Petitioner paid the first such premium, and the annuity contract, No. AN–53651, was issued as of December 20, 1951.

On December 21, 1951, petitioner "borrowed" on his personal note the amount of $59,213.75 from the Girard Trust Corn Exchange Bank (hereinafter called the bank), pledging as collateral security

the foregoing contract. He used those funds to prepay at a discount all future premiums to become due on his annuity contract by causing the bank to credit the foregoing amount to the account of the company. The contract was thereupon fully paid up.

Under the actual mechanics of the foregoing transaction, petitioner was at no time in possession of funds which he was free to apply to any purpose. The amount "borrowed" was transferred on the books of the bank to the credit of the company, to be applied in payment of all future premiums on petitioner's contract. At no time was a "loan" actually outstanding in an amount exceeding the value of the collateral security.

On December 24, 1951, petitioner paid an additional $13,627.30 to the company, purportedly as interest to December 20, 1956, on an anticipated loan. He received a receipt designating the payment as "interest on Annuity Loan Contract No. AN–53651 to December 20, 1956." He eventually deducted the amount thereof as "interest" in his income tax return filed for 1951.

After such payment the "cash or loan" value of the annuity contract was in the amount of $68,364, which it would otherwise have reached on its fifth anniversary date, in 1956. On December 27, 1951, petitioner received from the company the full amount of such "cash or loan" value, and executed an agreement designated "Annuity Loan Agreement." On the same day, using part of the proceeds so received, he repaid to the bank the earlier loan, on which he had previously paid in advance, purportedly as interest, the amount of $45.55.

On December 31, 1952, petitioner paid to the company the additional amount of $9,699.64 and was issued a receipt designating the payment as "Annuity Loan Interest to December 20, 1959." He deducted the amount so paid as "interest" on his income tax return for 1952.

As a result of the latter payment, the "cash or loan" value of the annuity contract increased to $73,728, which it would otherwise have reached on its eighth anniversary date, in 1959. Petitioner received, on the same day, the amount of such increase, $5,364, and executed a second agreement designated "Annuity Loan Agreement."

At the time this proceeding was heard, the alleged loan had not been repaid.

Respondent disallowed both of the foregoing deductions.

OPINION.

Petitioner paid one annual premium on an annuity contract. He then borrowed from a bank the amount necessary to prepay at a discount all future premiums, used the loan proceeds for such purpose, and thereupon had a fully paid-up policy. He then paid an addi-

tional sum to the company, which he claims as interest in advance to the 1956 anniversary date of the policy, and received, purportedly as a loan, the "cash or loan" value of the policy as of its 1956 anniversary date. He used part of the funds so received to repay the bank loan. In the following year he made another payment to the company, again designated as advance interest, this time to the 1959 anniversary date of the policy, and received, purportedly as an additional loan, the additional amount to which the "cash or loan" value of the policy would otherwise increase by the latter date.

Petitioner relies upon section 23 (b) of the Internal Revenue Code of 1939 [1] as authority for the deductions claimed. Respondent insists that (1) no indebtedness arose upon which payments of interest may be predicated, and (2) the payments here in question constituted premiums rather than interest. He also relies upon portions of Revenue Ruling 54–94, 1954–1 C. B. 53. [2]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME

In computing net income there shall be allowed as deductions :

*      *      *      *      *      *

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.

[2] Rev. Rul. 54–94 :

The attention of the Internal Revenue Service has been called to several situations where taxpayers are attempting to derive supposed tax benefits in connection with transactions designed to obtain interest deductions, for Federal income tax purposes. The question is whether the amounts designated as "interest" are deductible under section 23 (b) of the Internal Revenue Code. The following two examples are illustrative :

*Example 1.* M Insurance Company has sold to the taxpayer an "annuity savings bond" (herein called the "bond") under the following conditions: Taxpayer "pays" to M a single cash premium of $100,000. To finance the premium, taxpayer pays $100 to M in cash and "borrows" $99,900 from M on a note that bears "interest" at the rate of 5 percent the first year and 3 percent thereafter. Taxpayer is not personally liable on the note, M's sole recourse being against the bond.

The bond has a maturity of 30 years. The "cash value" of the bond is $100,000 at the time the bond is issued and the "cash value" increases at the rate of 2½ percent a year compounded annually. At maturity taxpayer will be entitled to an annuity based on the "net cash value" of the bond at that time, i. e., the excess of the "cash value" over the unpaid balance on taxpayer's note to M. Taxpayer has the election at maturity to receive in cash the "net cash value" of the bond, and if taxpayer dies before maturity a beneficiary named by him is entitled to the then "net cash value".

(In some cases of this type it is provided that the taxpayer may surrender the bond at any time after 1 year and receive the "net cash value" thereof at such time. In some cases it is provided that the taxpayer may at any time borrow the "net cash value" on the bond on a nonrecourse note without surrendering the bond. In such cases there may be no "net cash value" at maturity and if so no annuity will be paid. In some cases it is provided that the taxpayer may at any time suspend payment of "interest" except to the extent of one-sixteenth of 1 percent without surrendering the bond, and the "cash value" of the bond will cease to increase during such suspension.)

Taxpayer claims that for Federal income tax purposes he may deduct the "interest" that he "pays" on the amount that he has "borrowed" on the bond, but that he realizes capital gain if he sells the bond. If this is so, and if taxpayer's surtax rate is sufficiently high, he will make a "profit" on the transaction notwithstanding that he pays 3 percent "interest" for a 2½ percent investment.

*Example 2.* * * * [Concerns U. S. Treasury notes—not relevant to this case.]

*      *      *      *      *      *      *

It is the view of the Internal Revenue Service that amounts paid by taxpayer and designated as "interest" in the above examples are not interest within the meaning of

Respondent first contends that no indebtedness arose because the loan was given on the security of the policy, and was without personal recourse against petitioner.[3] Nonrecourse is typical of loans by insurance companies to policyholders. And even if not so in terms, such insurance loans are generally without recourse in fact. Insurance companies do not normally lend more than the cash value of the policy, and upon default will resort to such cash value to satisfy the indebtedness. Respondent's position here seems to require a holding that no interest deduction is permissible on any such loans. We have always been of the opinion that such interest, where paid by a cash basis taxpayer, is deductible. Cf. *Estate of Pat E. Hooks*, 22 T. C. 502.

Nor do we agree with respondent's next contention that the payments in question constituted premiums. The policy became fully paid up when the proceeds of the bank loan were applied to prepay at a discount all future premiums. Thereafter, no further premiums were or could ever become due.

Nonetheless, the deductions here sought must be denied. While in form the payment relied upon by petitioner appears clearly to constitute interest within the meaning of section 23 (b) of the Internal Revenue Code of 1939, the entire transaction lacks substance.

In *Gregory* v. *Helvering*, 293 U. S. 465, the taxpayer owned all the stock of one corporation, United, which in turn owned 1,000 shares of another corporation, Monitor. The taxpayer wished to sell the Monitor shares, but sought to avoid the tax liability which would follow a direct transfer of the Monitor shares from United to herself.

---

section 23 (b) of the Code, and are not deductible for Federal income tax purposes. Cf. *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552, Ct. D. 456, C. B. XI–1, 274 (1932), where the Supreme Court indicated that interest is "the amount which one has contracted to pay for the use of borrowed money."

In the above examples the amounts paid by the taxpayer are not in substance payments for the use of borrowed money. As a matter of substance the taxpayer does not borrow any money, hence there is no "debt" on which he pays "interest." An instrument that is called a "note" will not be treated as an indebtedness where it does not in fact represent an indebtedness. See *Talbot Mills* v. *Commissioner*, 326 U. S. 521, Ct. D. 1660, C. B. 1946–1, 191; *Matthiessen, et al.* v. *Commissioner*, 194 Fed. (2d) 659. In example 1, part of the "interest" paid by the taxpayer will be returned to him through the increase in the value of the bond and the remainder represents a payment to M for arranging the transaction so that taxpayer may derive a supposed tax benefit. If it is possible to regard the transaction as an annuity transaction at all, the "interest" payments in reality represent the premiums paid for the annuity. If the transaction is regarded as an endowment contract, the "interest" deduction is .to be disallowed under section 24 (a) (6) of the Code. * * * taxpayer does not expect to make a cash profit on the transaction independent of Federal income tax consequences, nor does taxpayer risk the money that he "borrows." Cf. *Commissioner* v. *Transport Trading & Terminal Corp.*, 176 Fed. (2d) 570, 572, where the Court of Appeals for the Second Circuit emphasized that "in construing words of a tax statute which describe commercial or industrial transactions we are to understand them to refer to transactions entered upon for commercial or industrial purposes and not to include transactions entered upon for no other motive but to escape taxation."

[3] But we note that petitioner was obligor for 7 days upon "his personal note payable on demand" to the bank, and conclude that such loan was with personal recourse against petitioner.

Solely to avoid that liability, the taxpayer created a third corporation, Averill, pursuant to the laws of Delaware. Three days later United transferred to Averill the 1,000 Monitor shares. Three days thereafter, Averill was dissolved, and liquidated by transferring to the taxpayer, its sole stockholder, all of its assets, i. e., the Monitor shares.

The foregoing accorded perfectly with the literal terms of section 112 (g) and (i) (1) (B) of the controlling Revenue Act of 1928. The taxpayer contended that every element of the statute had been met, but the Court held this insufficient. That statute was held to require a transfer " 'in pursuance of a plan of reorganization' * * * and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either." The sum of all the activities was described as "an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business * * * but to transfer a parcel of corporate shares to the petitioner."

The Court acknowledged that Averill was a real, valid corporate entity, but found that it was created as nothing more than a contrivance for the purposes of the overall plan of transferring shares of stock to the taxpayer. The transaction, although in terms within the statute, was "an elaborate and devious form of conveyance masquerading as a corporate reorganization."

In the case at bar we might well paraphrase some of the statements of the Supreme Court in the *Gregory* case. Thus, section 23 (b) requires a payment for the use or forebearance of money, and not a payment in pursuance of a plan (the creation of an interest deduction) having no relation to the purported result, the purchase of an annuity. The real payment here was not the alleged interest; it was the net consideration, i. e., the first year's premium plus the advance payment of future premiums plus the purported interest, less the "cash or loan" value of the policy. And the benefit sought was not an annuity contract, but rather a tax deduction of that part of the gross outlay designated for that purpose as "interest." Petitioner did not seek an annuity, and in fact gave up all substantial rights of an annuitant in order to reach his true goal, deductions in an amount large enough to reduce his taxes in a sum greater than the net consideration or cost to him of the entire operation.

We might well characterize petitioner's activities here as an operation having no business or annuity or borrowing purpose—a mere device which put on the form of a loan as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to borrow money (or

purchase an annuity) but to create a deduction for income tax purposes.

Similarly, we may freely concede the reality and validity of the annuity contract introduced into evidence. But it was acquired solely as a "contrivance," to the end that petitioner should acquire an interest deduction. Paraphrasing once more, the entire transaction, although in terms within section 23 (b), was an elaborate and devious attempt to create a deduction for tax purposes masquerading as the purchase of an annuity policy.

In the *Gregory* case, the taxpayer had at least an ultimate bona fide transaction in mind, the sale of the Monitor shares, and sought merely to avoid part of the tax thereon. Here there was no independent nontax transaction in contemplation to which the sham activity was merely subsidiary; the sole activity, its beginning and end, was the production, where none would otherwise have existed, of a deduction.

We do not consider relevant the fact that the policy in question still existed at the date of this hearing. The various actions taken with respect thereto were such as to make its lapse prior to its 1959 anniversary date impossible. We find it far more significant that the alleged "loan," despite petitioner's assertion of an intention to continue the policy, has not been repaid. In fact, petitioner qualified his statement of intention in the following significant language: "I would like to continue the plan, and I will continue it very definitely, if the interest deductions are allowed."

If the deductions claimed are not to be allowed, there is no possibility and there could never have been a possibility that petitioner's transactions will result other than in a loss. Insurance companies find it convenient to realize profits, and thus the "interest" on a loan of "cash or loan" value is necessarily greater than the increases in value of the same policy. To recognize this fact is to recognize that the sole value of the series of acts undertaken lies not in any business, investment, or annuity purpose, but solely in the tax field.

We realize that the recent majority opinion of the United States Court of Appeals for the Fifth Circuit, affirming the District Court, in *United States* v. *Bond*, 258 F. 2d 577, has reached an opposite result on facts which may be somewhat similar, but we nevertheless conclude that the transaction in question here did not represent a bona fide borrowing in substance, as opposed to form, and that respondent did not err in denying the deductions sought. Cf. *Eli D. Goodstein*, 30 T. C. 1178.

No evidence was offered with respect to the additions to tax determined by respondent pursuant to sections 294 (d) (1) (A) and 294 (d) (2) of the Internal Revenue Code of 1939. Accordingly, those additions must be sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*

TIETJENS, *J.*, dissents.