Robert M. Diggs and Clara C. Diggs v. Commissioner.
Diggs v. Commissioner
Docket No. 64648.
United States Tax Court
T.C. Memo 1959-99; 1959 Tax Ct. Memo LEXIS 146; 18 T.C.M. (CCH) 443; T.C.M. (RIA) 59099; May 19, 1959
*146 Held, payments made to an insurance company by the petitioner in connection with certain loans which were geared to annuity contracts issued by the insurance company to the petitioner, are not deductible as interest. The transactions here involved lack substance. W. Stuart Emmons, 31 T.C. 26 and Carl E. Weller, 31 T.C. 33, followed. Held, further, breakage of glassware and china by ordinary handling, by domestic help, in the course of cleaning, and by family cat, does not entitle petitioner to a casualty loss deduction within the meaning of section 23(e)(3) of the Internal Revenue Code of 1939. Robert M. Diggs, pro se, Olean, N. Y. Emil Sebetic, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent *147 determined deficiencies in the petitioners' income tax for the years 1952 and 1953 in the respective amounts of $5,155 and $18,132.60. The issues are: (1) Whether certain payments made by the petitioners in the years 1952 and 1953 are deductible as interest within the meaning of section 23(b) of the Internal Revenue Code of 1939; [1] and (2) Whether the breakage of glassware and china amounting to $225 in 1952 and $89.25 in 1953 entitles the petitioners to casualty losses within the meaning of section 23(e)(3). Findings of Fact Robert M. Diggs and Clara C. Diggs, husband and wife, are residents of Olean, New York. They filed joint income tax returns for the years 1952 and 1953 with the district director of internal revenue at Buffalo, New York. Robert M. Diggs will hereinafter be called the petitioner. In November 1951 the petitioner applied to the Standard Life Insurance Company of Indiana, hereinafter called Standard, for two 41-year deferred annuity contracts, each for a $5,000 annual premium, and each providing for monthly annuity payments to petitioner of $3,113.18 commencing on December 12, 1992. Together *148 with the two applications he made a payment, by two checks, of the total amount of $10,000, representing payment of the first annual premium on each annuity contract. On December 12, 1951, Standard issued the two annuity contracts, numbered AN-53550 and AN-53551, to the petitioner. On December 24, 1951 the petitioner "borrowed" from the Girard Trust Corn Exchange Bank, hereinafter called the Bank, the amount of $236,856.72, on a personal note payable on demand, and secured by the two annuity contracts. Petitioner used these funds to prepay all the premiums on both annuity contracts, 40 years in advance, by having the Bank credit the amount of $236,856.72 to the account of Standard. Upon the prepayment of the premiums for 40 years in advance the cash value of the two annuity contracts, as of December 12, 1951, became $122,303 each. On December 26, 1951, at the petitioner's request, Standard issued two checks to the Bank, each in the amount of $118,428.36, in full payment of petitioner's note to the Bank in the amount of $236,856.72. At the same time Standard issued two checks to the petitioner, each in the amount of $3,874.64. On the same date Standard recorded on its books a loan *149 to the petitioner in the total amount of $244,606 at the rate of 4 per cent per annum, and also recorded in the loan account that Standard had received from petitioner on that date prepaid interest on the loan for 51 weeks in the amount of $9,596.08. On December 27, 1951 the Bank credited petitioner's demand loan account with the amount of $236,856.72, thereby closing out that particular loan made to petitioner. Petitioner's note to the Bank was marked as paid and the Bank also executed releases of the assignments of the two annuity contracts which had served as collateral security for the note. Petitioner, in his return filed for the year 1951, claimed a deduction for interest under section 23(b) in the amount of $9,596.08, representing two checks issued to Standard of $4,798.04 each, and a check to the Bank in the amount of $182.20. This deduction was allowed by the respondent. In December 1952 the petitioner issued to Standard two checks for the total amount of $9,784.24 as prepayment of interest on the annuity loans from December 12, 1952 to December 12, 1953. On his 1952 Federal income tax return (filed jointly with his wife) the petitioner claimed a deduction for interest *150 paid, under section 23(b), in the amount of $9,784.24. Respondent disallowed this deduction. On September 1, 1953 the petitioner wrote the following letter to Standard: "Dear Sirs: "I should like to increase the loans on annuity loan contracts AN 53550 and AN 53551 effective September 12 to the cash value as of the end of the contract year on December 12. As I understand it, each contract will have an additional loan value of $4429.50, on which 3 months' interest would be $44.30. Accordingly, I am enclosing two checks, each for $44.30, to pay in advance the interest from September 12 to December 12 on the additional loans. "If you can send me the new notes for execution, I feel sure that all requirements can be met in time to enable you to issue the checks for the additional loans by the 12th. "Very truly yours, "/s/ Robert Maclary Diggs" On September 10, 1953, Standard sent to the petitioner two checks for $4,429 each, or a total of $8,858, representing the additional loans requested by petitioner, and increased the outstanding loans to petitioner to $126,732 on each of his two annuities, or a total of $253,464. In November 1953 the petitioner indicated to Standard *151 his intention to prepay three years of interest on the loans and then to "borrow" an additional amount from Standard to bring the total outstanding loan on each annuity contract up to the loan value of such contract as of December 12, 1956. On December 9, 1953 the petitioner paid to Standard a total of $32,814.48, representing interest on the loans through December 12, 1956. The total loan value for each annuity contract as of December 12, 1956 was $136,727, and on December 11, 1953, Standard issued to petitioner two checks, each for $9,995, representing the increased loan to petitioner. As of December 11, 1953, there was an outstanding loan on Standard's books to petitioner of $136,727 on each annuity contract, or a total of $273,454. Petitioner claimed a deduction on his 1953 Federal income tax return (filed jointly with his wife) for interest under section 23(b) in the amount of $32,903.08, representing the two checks issued to Standard in the amount of $44.30 each, and the two checks issued to Standard in the amount of $16,407.24 each. Respondent disallowed these deductions. On December 12, 1956 Standard made an additional loan to petitioner on each of the annuity contracts *152 in the amount of $3,331.50, bringing the amount of the outstanding loan to petitioner on each contract to a total of $140,058. This was the cash value of each annuity contract as of December 12, 1957. On December 10, 1956 the petitioner issued to Standard two checks for $5,469.08 each, and two checks for $133.24 each, for a total of $11,204.64, as prepayments of interest on the annuity loans from December 12, 1956 to December 12, 1957. On or about December 12, 1957, Standard canceled the two annuity contracts held by the petitioner. On its books and records Standard set off the total cash surrender value of the two contracts in the amount of $280,116 against the total of the outstanding loans by Standard to the petitioner in the same amount. Petitioner and his wife, on their joint return for the year 1952, claimed a deduction for a casualty loss in the amount of $225. Of this amount $175 was for glassware and china accidentally broken by petitioner when he dropped a box wherein the glassware and china had been placed for moving purposes, and $50 was for cocktail glasses and old-fashioned glasses broken by domestic help. On their joint return for 1953 the petitioner and his wife *153 claimed a casualty loss deduction for (1) a martini pitcher broken accidentally by petitioner hitting it against a water faucet ($7.50); (2) a cocktail shaker broken by the family cat ($62.50); a glass pitcher broken by domestic help ($12.50); and a glass hurricane lamp broken by the application of heat from the candle to the cold glass ($6.75). No part of these losses was reimbursed by insurance. Respondent disallowed these deductions. Opinion A plan like the one here involved was before this Court in W. Stuart Emmons, 31 T.C. 26 and Carl E. Weller, 31 T.C. 33. The same insurance company that issued the policies in those two cases issued the policies to the petitioner in this case. In this case and in the Emmons case, the same bank was involved in one of the intermediate steps of the plan. For all material purposes the facts in the case before us are in no way different from the facts in the other two cases. In the Emmons case this Court characterized the taxpayer's activities "as an operation having no business or annuity or borrowing purpose - a mere device which put on the form of a loan as a disguise for concealing its real character, and the sole *154 object and accomplishment of which was the consummation of a preconceived plan, not to borrow money (or purchase an annuity) but to create a deduction for income tax purposes." The mechanics of the plan before us duplicate those in the Emmons and in the Weller cases. In both of those cases the taxpayers contended that certain payments to the insurance company constituted the payment of interest on an indebtedness and were, therefore, deductible under section 23(b). We decided against the taxpayers in both cases. The payments involved in this case are indistinguishable from those in the two prior cases. For the reasons stated in those cases, we hold that the petitioner here is not entitled to a deduction for interest paid under section 23(b) in the years 1952 and 1953. Petitioner makes an argument that the respondent allowed a similar deduction for interest paid in the year 1951, under this same plan, and, therefore, the respondent is estopped from disallowing the interest deductions in 1952 and 1953. This argument must fail. Estoppel must be specially pleaded. Lodi Iron Works, Inc., 29 T.C. 696; Estate of Thomas E. Steere, 22 T.C. 79, affirmed sub nom. *155 Rhode Island Hosp. Tr. Co. v. Commissioner, 219 Fed. (2d) 923. No such pleading was made here and we cannot, therefore, consider the argument of estoppel. Even if we were to consider the estoppel argument on its merits, we are of the opinion that, under the facts of this case, it would be unavailing to the petitioner. See South Chester Tube Co., 14 T.C. 1229; Automobile Club of Mich. v. Commissioner, 353 U.S. 180. The second issue involves the disallowance by the respondent of certain casualty loss deductions claimed by the petitioner, $225 in 1952 and $89.25 in 1953. The items involved are glassware and china items, such as cocktail glasses, a martini pitcher, a cocktail shaker, a glass pitcher, and a glass hurricane lamp. These items were accidentlly broken in the course of ordinary handling, by domestic help, in the course of cleaning or by the family cat. To constitute a deduction under section 23(e)(3) a loss must arise from "fires, storms, shipwreck, or other casualty." Without passing upon the sufficiency of the proof presented by the petitioner to establish the breakage and the resulting loss, we hold that the somewhat routine breakage *156 in this case does not amount to a "casualty" within the meaning of the statute. We said in Ray Durden, 3 T.C. 1: "Under the doctrine of ejusdem generis, it is necessary to define the word 'casualty' in connection with the words 'fires, storms, shipwreck' immediately preceding it." The general nature of the specific mishaps mentioned in the statute involve the uncontrollable operation of nature or some external force, such as fires, storms or shipwrecks. We cannot agree that the breakage of ordinary household equipment such as china and glassware through negligence in handling, or by a family pet, can properly be called a "casualty" under section 23(e)(3). As we pointed out in Ray Durden, supra, it is not enough to say that a loss was a casualty within the ordinary sense of the word. It must be a mishap in the general nature of a fire, storm or shipwreck before it can be considered a casualty loss. It is abundantly clear the mishaps here were not of that nature. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1939, as amended.↩