Robert S. Gerstell and Alice R. Gerstell v. Commissioner.
Gerstell v. Commissioner
Docket No. 63085.
United States Tax Court
T.C. Memo 1962-181; 1962 Tax Ct. Memo LEXIS 127; 21 T.C.M. (CCH) 994; T.C.M. (RIA) 62181; July 30, 1962
*127 Held: (1) Amounts paid to an insurance company in the form of interest on purported annuity policy loans not deductible; (2) Commissioner not estopped to deny deductions since petitioner is not entitled to rely on private letter rulings issued to persons other than petitioner; and (3) out-of-pocket costs not allowable either as expenses orlosses. Richard H. Appert, Esq., 14 Wall St., New York, N. Y., and David Sachs, Esq., for the petitioners. William F. Fallon, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income tax against petitioners as follows: Year
Deficiency
1952
$57,449.10
1953
78,845.50
1954
92,187.96
Petitioners claim a refund of $5,623.62 for 1952 and a refund is claimed in the alternative for the year 1954 in the amount of $14,386.23. The questions presented are: (1) Whether the Commissioner is estopped from disallowing claimed interest deductions which arose from transactions that did not create a true indebtedness where the Commissioner retroactively revoked a position taken in unpublished ruling letters issued to parties other than the petitioners herein; (2) if the claimed interest deductions are not *128 allowed, whether petitioners are entitled to a deduction for their out-of-pocket costs incurred in connection with certain annuity transactions; and (3) if the interest deductions are allowed, whether petitioners realized taxable income upon the disposition of certain annuity policies. Findings of Fact A stipulation of facts and a supplemental stipulation of facts to which certain exhibits are attached were filed by the parties and are incorporated herein by this reference. Petitioners are husband and wife who reside in Easton, Pennsylvania. They filed their joint cash basis Federal income tax returns for the years 1952, 1953, and 1954 with the district director of internal revenue for the district of Scranton, Pennsylvania. During the taxable years here involved petitioner Robert S. Gerstell was an executive with the Alpha Cement Company in Easton. He will hereinafter be referred to as Gerstell or petitioner since Alice R. Gerstell is involved only because she filed her income tax returns jointly with him. During the latter part of 1952 an insurance agent suggested to petitioner that he purchase certain annuity policies which would afford a person in his tax bracket certain income *129 tax savings. The insurance agent showed Gerstell copies of several private letter rulings issued by the Commissioner to other parties which rulings outlined the tax consequences of the proposed annuity transactions. The letter rulings were never published and all were issued in the years 1947, 1948, 1950, 1951, and 1952. Generally they stated that interest paid on a loan made by the insurance company secured by an annuity policy where the premiums had been prepaid was deductible for income tax purposes. One ruling also stated that if the annuity policy was sold to a party other than the issuing company any gain would be considered as a capital gain. In entering into the transactions described hereafter, petitioner relied upon the administrative position of the respondent as set forth in the aforesaid letter rulings. The petitioner would not have entered into said transactions if he had not believed that interest paid on annuity contract loans was deductible for income tax purposes. Petitioner consulted his attorney concerning the plan and specifically as to the advisability of relying on the letter rulings. He was advised to proceed since his attorney was of the opinion that the Commissioner *130 would not retroactively reverse the position taken in the rulings. Relying on this advice petitioner and Republic National Life Insurance Company of Dallas, Texas (hereinafter called Republic) agreed to enter into certain transactions and sign certain documents. The following paragraphs set forth our further findings of fact and report these transactions as they appeared in form: On December 22, 1952, petitioner applied to Republic for the issuance of three annuity contracts. Two of the annuity contracts, Nos. 101660 and 101661, were issued on the same day as applied for while the third annuity contract, No. 101662, was back dated to December 20, 1952. Gerstell's children were named as the annuitants in the contracts. Gerstell, however, reserved to himself and his estate all the rights thereunder. On December 23, 1952, Gerstell issued a check in the amount of $20,000 in payment of the initial premiums of the 41 annual premiums on each of the annuity policies. On December 28, 1952, Gerstell issued to Republic a check in the amount of $84,994.84 which amount Republic designated as "Interest due on loan" to December 1956. This loan however was not made until December 30, 1952. On December *131 30, 1952, Gerstell obtained from The Philadelphia National Bank, Philadelphia, Pennsylvania, the amount of $473,710, giving his personal demand notes and pledging the annuity policies as security. Subsequently, on the same day, Gerstell used these funds to prepay at a discount the remaining 40 annual premiums on each of the annuity policies by causing The Philadelphia National Bank to credit the foregoing amount to Republic's account. The amount borrowed was transferred on the books of the bank to the credit of Republic, to be applied in payment of all future premiums on the annuity contracts. At no time was a loan actually outstanding in an amount exceeding the value of the collateral security. After the premium and interest payments the combined cash or loan value of the three annuities totaled $533,784.01. This amount represented the combined cash or loan value the annuities would otherwise have reached in December 1956. Gerstell immediately executed three "Annuity Loan [Agreements]" and obtained the aforementioned sum of $533,784.01 from Republic on December 30, 1952. He repaid The Philadelphia National Bank $473,710 in full satisfaction of the amount he had obtained from it earlier *132 the same day, together with interest and clearance charges of $368.45. Gerstell retained the excess of $59,705.56. One year later, on December 23, 1953, Gerstell paid Republic an additional amount of $101,097.17 which was designated as "Loan-Interest due" to December 1960. This prepayment of interest again increased the cash or loan value of the policies to $589,826, an increase of $56,041.99. Within a day or two Gerstell borrowed from Republic the entire amount of the increased value of the policies. He signed additional loan agreements for this amount. The Commissioner's first published ruling involving annuity transactions appeared in March 1954, Rev. Rul. 54-94, 1954-1 C.B. 53, wherein the Commissioner stated that amounts claimed as interest would not be deductible. On December 22, 1954, Gerstell made a further prepayment of interest in the amount of $118,865.26 and following the prepayment borrowed back from Republic all but $1,500 of the increased cash or loan value of the policies. Republic subsequently determined that the prepayment should have been $600.20 less than the payment made and it refunded that amount to Gerstell. Gerstell had previously made arrangements to transfer *133 the annuity policies, subject to the outstanding loans, to Moylan Investment Corporation of Philadelphia (hereinafter called Moylan). Moylan had issued a check dated December 15, 1954, to Gerstell in the amount of $500 for the three annuities. On January 5, 1955, Moylan surrendered the annuity policies to Republic and received in return proceeds $104,336.98. This return resulted from the fact that the surrender value was computed as of the date of surrender, whereas the cash or loan value had been computed as of the date to which interest had been prepaid. The amount included therefore a return of prepaid interest. Moylan was organized in 1953 by the broker who sold the annuity policies to Gerstell. The primary purpose for the organization of Moyland was to acquire the annuity policies sold by the broker to various people, including petitioner, so that the transfer of the annuities would be to a party other than the issuing company. It did however acquire some other investments. The sums of $84,994.84, $101,097.17, and $118,265.06 deducted by the petitioners on their 1952, 1953, and 1954 Federal income tax returns, respectively, as interest reflected a rate of 4 percent per annum for *134 the amounts obtained from Republic. Under the provisions of the annuity policies they were not to earn interest until the end of the tenth year when there would be a total accumulation of approximately one-half percent. The rate of earnings then increased gradually until the rate would be slightly less than 3 percent per annum at the end of the fortieth year. During the calendar year 1952, the amounts paid by Gerstell as premiums on the annuity contracts and as interest on loans from Republic exceeded by $44,920.83 the amounts received by the petitioner as annuity contract loans. During the calendar year 1953, the amounts paid by Gerstell as interest on loans from Republic exceeded by $45,055.18 the amounts received by the petitioner as annuity contract loans. During the calendar year 1954, the amounts paid by Gerstell as interest on loans from Republic exceeded by $58,033.07 the amounts received by the petitioner as annuity contract loans and as payment for the sale of the annuity contracts. The total of these out-of-pocket costs of the petitioner for the 3 years was $148,009.08. Opinion BLACK, Judge: Petitioners do not contest certain adjustments made by the respondent in the notices *135 of deficiency with respect to the disallowance of certain travel and entertainment expense deductions, state and miscellaneous tax deductions, and unreimbursed business expense deductions; the addition of certain capital gains and the allowance of an ordinary loss deduction. Respondent concedes that he erroneously computed petitioner's dividends received credit for 1954 in the notice of deficiency. The deficiencies contested arise from the disallowance under section 23(b) of the 1939 Code of the amounts of $84,994.84 and $101,097.17 for the years 1952 and 1953, respectively, deducted by petitioners on their income tax returns as interest paid on annuity policy loans. As to 1954, petitioners concede that the amount of $118,865.26 was properly disallowed as an interest deduction under section 163(a) of the 1954 Code but assert that petitioners are entitled to deduct as an expense or loss their out-of-pocket costs or expenditures in connection with the annuity transactions. Should we disallow the contested interest deductions as to 1952 and 1953 petitioners contend in the alternative that they are entitled to deduct as an expense or loss their out-of-pocket expenditures incurred in those *136 years. Also, as an alternative, petitioners contend that the out-of-pocket costs in the total amount of $148,009.08 should be allowed in one year, 1954, the year the annuity policies were transferred, in lieu of separate deductions in 1952, 1953, and 1954. The respondent contends that the transactions under consideration did not give rise to a true indebtedness on which deductible interest was payable and that the Supreme Court's decision in Knetsch v. United States, 364 U.S. 361 (1960), is controlling. In that case the Court held that where the taxpayer's annual borrowings kept the cash value of annuity policies at a nominal amount there was nothing of substance to be realized by the taxpayer beyond a tax deduction. The Court determined that as payments of interest, the transaction was a sham. Petitioners, however, contend that the Commissioner is estopped from denying the interest deductions for 1952 and 1953 since in entering into the annuity transactions petitioner relied on individual letter rulings issued by the Commissioner to parties other than the petitioner and that the Commissioner's retroactive revocation of the rulings was arbitrary and discriminatory as to petitioner. *137 The Supreme Court in Knetsch v. United States, supra, did not decide this issue. The unpublished letter rulings are of no avail to the petitioners here. This identical issue was presented in W. Stuart Emmons, 31 T.C. 26 (1958), and Carl E. Weller, 31 T.C. 33 (1958), both affd. 270 F. 2d 294 (C.A. 3, 1959), certiorari denied 364 U.S. 908. There is no material distinction between the instant case and the companion cases of Emmons and Weller. In those cases the Court of Appeals specifically found that the taxpayers were not entitled to rely upon the unpublished rulings issued to others than themselves. To hold that the respondent is bound by letter rulings issued to other taxpayers would severely limit the practice of private administrative rulings, Goodstein v. Commissioner, 267 F. 2d 127 (C.A. 1, 1959), affirming 30 T.C. 1178. We hold for the respondent on this issue. We must next decide whether or not petitioners can deduct as an expense or loss their out-of-pocket costs incurred in connection with the transactions either on a yearly basis or in their entirety in 1954 pursuant to sections 23(a)(2) or 23(e)(2) of the 1939 Code and sections 212 or 165(c)(2) of the 1954 Code. *138 [1] *139 The petitioners do not claim the deduction as a capital loss under section 165(f) of the 1954 Code. [2] There is no doubt that the out-of-pocket costs were actually incurred by petitioners and in our Findings of Fact we have found the total amount thereof, but the question remains as to whether or not they are deductible under any of the statutes named. With respect to the claimed deductions as expenses we cannot see that petitioners in any manner incurred any expenses for the production or collection of income or for the management, conservation or maintenance of property held for the production of income. There was no income involved at all. Gerstell entered into the annuity transactions under the circumstances named in our Findings of Fact merely to obtain a tax advantage and while *140 this would result, if successful, in a net economic savings for petitioners it was not the result of an income-producing activity. Consequently, the deductions are not allowable as expenses. Nor do we believe that the claimed deductions are allowable as losses. In order to qualify under the loss sections of the 1939 and 1954 Codes it would be necessary to conclude that the transactions were entered into for profit, though not connected with a trade or business. We cannot reach this conclusion. An economic gain for the petitioners would only result if the interest payments were allowed as a deduction and if the income accrued on the annuities would be realized as capital gain on a sale prior to maturity. We do not believe that a transaction may be considered as a transaction entered into for profit if the only economic gain derived therefrom results from a tax reduction. This view has expressly been adopted by the Tax Court in Eli D. Goodstein, 30 T.C. 1178 (1958) and Morris R. DeWoskin, 35 T.C. 356 (1960). In the latter case we said: The [out-of-pocket] expenses were not incurred in a trade or business or as the result of a casualty loss. Therefore, the issue of whether the transaction *141 was entered into for a profit * * * must be resolved if the expense is to be deductible. Relying on our holding in Goodstein that there was "no true motive of deriving a profit" from the transaction, it follows that there is no statutory basis for allowing the deduction for the out-of-pocket expense. * * * As to the issue of a loss deduction, we believe these cases to be applicable and controlling here and we hold for the respondent on this issue. In view of our holding we do not reach the issue as to which year or years the claimed deductions could be taken. In light of the fact that we have not allowed the interest deductions we do not reach respondent's alternative contention that the petitioners realized taxable income on the transfer of the annuities in 1954. Decision will be entered under Rule 50. Footnotes
1. Internal Revenue Code of 1939: SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * * Internal Revenue Code of 1954: SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management conservation, or maintenance of property held for the production of income; or e83) in connection with the determination, collection, or refund of any tax. SEC. 165. LOSSES. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * * ↩
2. SEC. 165. (f) Capital Losses. - Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.↩