Carl E. WELLER and Emily I. Weller,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

W. Stuart EMMONS, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

Nos. 12844, 12854.

United States Court of Appeals
Third Circuit.

Argued June 9, 1959.

Decided Sept. 9, 1959.

Richard H. Appert, New York City (John A. Garvey, Jr., New York City, Harry A. Dower, Allentown, Pa., White & Case, New York City, Perkin, Twining & Dower, Allentown, Pa., on the brief), for petitioners Weller.

Kenneth W. Gemmill, Philadelphia, Pa. (Converse Murdoch, P. J. DiQuinzio, Bruce S. Cronlund, Philadelphia, Pa., on the brief), for petitioner Emmons.

Grant W. Wiprud, Washington, D. C. (Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys. Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

These cases present identical questions of law,[1] namely, whether the Tax Court erred in holding that certain transactions involving prepayment of interest on annuity contract loans lacked substance so as not to be deductible as interest payments under Section 23(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(b).

The essential facts in the Emmons case, as found by the Tax Court, may be summarized as follows: Emmons, a cash basis taxpayer, purchased an annual premium annuity policy from Standard Life Insurance Company of Indiana in 1951. The policy required forty-one annual payments of $2,500 each, and the ini-

tial premium was paid on December 20, 1951, the date of issuance of the policy. The next day Emmons borrowed on his personal note $59,213.75 from the Girard Trust Corn Exchange Bank, pledging the annuity policy as collateral. This sum was credited to the account of the insurance company as a prepayment, at a discount, of all future premiums on the annuity policy.

On December 24, 1951, Emmons paid an additional $13,627.30 to Standard purportedly as interest to December 20, 1956, on an anticipated loan and received in return a receipt designating the payment as "Interest on Annuity Loan Contract No. AN–53651 to December 20, 1956." Following this payment the "cash or loan" value of the annuity contract had increased to $68,364. The petitioner received exactly that amount on December 27, 1951, and executed an agreement designated "Annuity Loan Agreement," providing for interest at 4 per cent per annum. That same day Emmons repaid the bank the earlier loan, utilizing part of the proceeds of the annuity loan.

One year later, on December 31, 1952, Emmons paid Standard the additional amount of $9,699.64 and received a receipt indicating the payment was for "Annuity Loan Interest to December 20, 1959." The discount rate for prepayment of interest was 2.85 per cent. Thus, the second prepayment of interest increased the cash or loan value of the annuity contract to $73,728 and the increase of $5,364 was received by the taxpayer on the same day. Upon receipt, Emmons executed a second "Annuity Loan Agreement." At the date of the proceeding in the Tax Court the "loans" had not been repaid.

Emmons deducted the $13,627.30 payment as interest in his income tax return filed for 1951 and the $9,699.64 payment

---

1. The cases were tried separately in the Tax Court and argued separately in this court; however, inasmuch as the Tax Court relied on the reasoning in the Emmons case as dispositive of both and as the facts differ in no material particulars, we will consider them together. Cases reported below: W. Stuart Emmons v. Commissioner of Internal Revenue, 1958, 31 T.C. 26, reviewed by full court (Tietjens, J., dissenting without opinion); Carl E. Weller v. Commissioner of Internal Revenue, 1958, 31 T.C. 33.

in his 1952 tax return. The Commissioner disallowed both deductions, insisting that (1) no indebtedness arose upon which payments of interest may be predicated, and (2) the payments constituted premiums rather than interest.

In arriving at its decision, which was reviewed by the full court, the Tax Court concluded that, despite the fact that the payments in question were in form interest within the meaning of Section 23(b) of the Internal Revenue Code of 1939, the entire transaction lacked substance and therefore was to be ignored for tax purposes.

The facts in the Weller case, except for dates and amounts, are practically the same.

Petitioners' attack on the judgments is essentially twofold. They assert that the payments clearly constituted interest within the meaning of Section 23(b) and were therefore deductible under that section. Additionally, they contend that the Commissioner may not, under the circumstances of these cases, retroactively reverse his prior rulings which allowed similar deductions.

Section 23 of the Internal Revenue Code of 1939, "Deductions from gross income," provides for deductions of "All interest paid or accrued within the taxable year on indebtedness * * *." The Supreme Court has defined the term interest as used in the Internal Revenue Code on several occasions. In Old Colony Railroad Co. v. Commissioner of Internal Revenue, 1932, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484, it was held to be "the amount which one has contracted to pay for the use of borrowed money." Again, in Deputy v. DuPont, 1940, 308 U.S. 488, 497–498, 60 S.Ct. 363, 368, 84 L.Ed. 416, the Court stated that " * * * although an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' within the meaning of § 23 (b). Nor are all carrying charges 'interest.' * * * We are dealing with the context of a revenue act and words which have today a well-known meaning. In the business world 'interest on indebtedness' means compensation for the use or forbearance of money. In absence of clear evidence to the contrary, we assume that Congress has used these words in that sense." Applying these definitions to the instant cases, we come to the crux of the government's case. It contends that since interest for tax purposes is confined to payments for the use of money and since no money or other economic benefit was ever in effect advanced to the taxpayers by the insurance company, the payments were not interest.

The Tax Court, and the government on appeal, rely quite heavily on the pattern of conduct evidenced by the taxpayer and Standard. This pattern, as summarized above, involved prepayments of interest which accelerated the cash or loan value of the policy, concurrent borrowing of the accelerated increase in the cash or loan value, thus immediately recouping a major portion of the purported prepayments of interest. The cycle was completed when the taxpayer claimed deductions on his 1951 and 1952 returns of the entire amounts of each prepayment of interest, although his actual outlay was much less. We agree with the conclusion of the Tax Court that, although in form the payments appear to constitute interest within the meaning of Section 23(b) of the Internal Revenue Code of 1939, the entire transaction lacks substance.

Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 268, 79 L.Ed. 596, relied upon by the Tax Court, involved the creation of a corporate entity for the purpose of transferring shares of stock to the taxpayer. While recognizing that a real, valid corporate entity was created and that the transaction was within the terms of the statute, the Supreme Court concluded that it was "an elaborate and devious form of conveyance masquerading as a corporate reorganization." The activities were described as "an operation having no business or corporate purpose —a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived

plan, not to reorganize a business * * but to transfer a parcel of corporate shares to the petitioner." The Court there also referred to the rule which excludes from consideration the motive of tax avoidance but determined that it was not pertinent to the situation "because the transaction upon its face lies outside the plain intent of the statute." The question of form versus substance as regards the incidence of taxation has been before the courts on a number of occasions involving numerous differing factual situations. In Higgins v. Smith, 1940, 308 U.S. 473, 476, 60 S.Ct. 355, 357, 84 L.Ed. 406 it was stated that "If * * the Gregory case is viewed as a precedent for the disregard of a transfer of assets without a business purpose but solely to reduce tax liability, it gives support to the natural conclusion that transactions, which do not vary control or change the flow of economic benefits, are to be dismissed from consideration." See Griffiths v. Commissioner of Internal Revenue, 1939, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319. In like vein the Supreme Court stated in Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981, "The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. * * * To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."

Any case of this nature is beset with difficulties, for in viewing the substance of the entire transaction one is faced with the rule alluded to above that enjoins us to disregard the motive of tax avoidance. That is not to say that we are confronted with a dilemma. Far from it. The proper resolution of the problem has succinctly been set forth by Judge Learned Hand in Gilbert v. Commissioner of Internal Revenue, 2 Cir., 1957, 248 F.2d 399, 411–412 (dissenting on a procedural matter unrelated to this case),

"* * * If, however, the taxpayer enters into a transaction that does not appreciably affect his beneficial interest except to reduce his tax, the law will disregard it; for we cannot suppose that it was part of the purpose of the act to provide an escape from the liabilities that it sought to impose. * * * [The Gregory doctrine] covers only those transactions that do not appreciably change the taxpayer's financial position, either beneficially or detrimentally."

Thus, the principle laid down in the Gregory case is not limited to corporate reorganizations, but rather applies to the federal taxing statutes generally. The words of these statutes which describe commercial transactions are to be understood to refer to transactions entered upon for commercial purposes and "not to include transactions entered upon for no other motive but to escape taxation." Commissioner of Internal Revenue v. Transport Trading & Terminal Corp., 2 Cir., 1949, 176 F.2d 570, 572, certiorari denied, 1950, 338 U.S. 955, 70 S.Ct. 493, 94 L.Ed. 1341.

The Tax Court could find no independent economic purpose present in the instant cases and thus concluded that the sole purpose was the creation of a tax deduction. The petitioners have gone to great lengths to demonstrate that there was commercial substance to the transactions, over and above the tax benefits, but we are far from convinced. If one ignores the practice of concurrently borrowing the increased cash or loan value of the contracts built up by prepayments of interest one might find some economic sense in the transactions, other than the hoped for tax deductions. However, given the practice, which is borne out by the records, the fact that there was a 4 per cent interest rate on the loans and a

mere 2.85 per cent discount rate on the prepaid interest, and the fact that the loans were non-recourse in nature and were never repaid, the conclusion of the Tax Court is a reasonable one.

■ Petitioners, on the other hand, point out that the insurance company, which was regularly organized and authorized to issue annuity contracts, and to make loans such as those made here, treated the payments on its books as interest received. The government does not challenge the validity of the labels employed by the insurance company nor does it contest the validity of the transactions under the Indiana insurance law. Rather, it points to the well-settled principle that for the purpose of the federal tax laws, the substance of transactions is to be determined uniformly in relation to the meaning and intendment of the federal laws. United States v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. A denial of these claimed deductions would represent no attack in any way upon the insurance laws of Indiana or any other state in which Standard operates nor would it characterize it a "sham corporation" issuing "sham policies." That there may be an obligation which is valid under local law is not determinative of whether there is a true indebtedness within the meaning of Section 23(b). See Haffenreffer Brewing Co. v. Commissioner of Internal Revenue, 1 Cir., 1940, 116 F.2d 465, 1941, certiorari denied, 313 U.S. 567, 61 S.Ct. 942, 85 L.Ed. 1526.

Petitioners also place considerable emphasis upon the provisions and legislative history of Section 24(a)(6), 26 U.S.C.A. § 24(a)(6), which prohibits deductions for certain specified forms of interest, that is, "any amount paid or accrued on indebtedness incurred or continued to purchase a single premium life insurance or endowment contract * * *." The

fact that annuity contracts are not covered by this prohibition is clear beyond peradventure of a doubt. However, such a showing is far from determinative of the issue in the case, for Section 24(a) applies to specific items that are *not* deductible. The section does not even purport to indicate what items are deductible and, therefore, legislative history indicating that annuity contracts were specifically not included therein fails to conclude the issue. Regardless of Section 24(a)(6), the taxpayers' payments must still qualify as interest under Section 23(b) to be deductible.

■ In disallowing the interest in these cases, the department relied upon Revenue Ruling 54–94, 1954–1 Cum.Bull. 53, which, of course, was issued after the taxable years in question. The petitioners contend that the Commissioner may not retroactively reverse his prior rulings which allowed similar deductions. The prior rulings had not been issued to the petitioners, for they had never requested any but were individual rulings in other cases. These individual rulings had been shown to petitioners by insurance company salesmen prior to the time of the purchase of the annuity contracts. Recognizing that they may not rely on these rulings directly, petitioners maintain that all taxpayers have the right to be treated equally and fairly and since they undoubtedly would have received similar rulings had they applied for them, they are entitled to their benefits. They argue further that the very number of individual rulings made by the Commissioner [2] established a practice, a course of conduct, and that a retroactive change would be an arbitrary exercise of the authority committed to the Commissioner by Congress.[3]

The first contention has little substance or reason to support it, for it is just another way of stating that anyone who

---

2. Although there is no evidence in the record as to the number of such rulings made by the Commissioner, Emmons testified he had been shown seven and Weller six or seven such individualized rulings.

3. Section 3791(b) provides:
   "Retroactivity of regulations or rulings —The Secretary, or the Commissioner with the approval of the Secretary, may prescribe the extent, if any, to which any ruling, regulation, or Treasury Decision,

sees a ruling should be allowed to rely on it. Even with respect to rulings *published* in the Internal Revenue Bulletin, the Supreme Court said in Helvering v. New York Trust Co., 1934, 292 U.S. 455, 468, 54 S.Ct. 806, 810, 78 L.Ed. 1361:

" * * * The rulings * * * 'have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law.' See cautionary notice published in the bulletins containing these rulings."

Certainly *unpublished* rulings can be given no greater effect.

■ In support of their second contention that it would be an abuse of discretion for the Commissioner to retroactively change his practice established by a series of individual rulings, taxpayers rely upon Automobile Club of Michigan v. Commissioner of Internal Revenue, 1957, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, and our case of Lesavoy Foundation v. Commissioner of Internal Revenue, 3 Cir., 1956, 238 F.2d 589. Reliance upon the Lesavoy case is misplaced, for it merely determined that the Commissioner had exceeded his permissible discretion in retroactively withdrawing a ruling issued to a particular taxpayer who had not estopped himself. The Supreme Court in Automobile Club of Michigan v. Commissioner of Internal Revenue, supra, sets forth the standard which we must apply in questions of this nature. In that case, the petitioner-automobile club had received a ruling of exemption from the Commissioner in 1934 which was reconfirmed in 1938. In 1945, applying a new interpretation of the revenue laws rendered by the General Counsel, the Commissioner revoked this individual ruling and applied his revocation retroactively to tax years 1943 and 1944. The revocations applied to ex-

emptions issued to all automobile clubs and the Supreme Court stated, 353 U.S. at page 186, 77 S.Ct. at page 711, "that the Commissioner, having dealt with petitioner upon the same basis as other automobile clubs, did not abuse his discretion." Similarly in the instant cases, the petitioners have been treated in the same manner as all other taxpayers.

Petitioners contend, however, that although the revenue ruling fails to indicate any limitation on its application, agents of the Treasury have stated to Congress that it does not intend to apply the revenue ruling retroactively to individuals who have previously been issued rulings. We need not determine whether such action if carried out would be an abuse of discretion, for petitioners are not in the same position as those parties who have been issued rulings. They are entitled to the same treatment as all other taxpayers similarly situated, i.e., without rulings, no more and no less. This the Commissioner has afforded them.

Petitioners' further arguments are adequately disposed of by Automobile Club of Michigan v. Commissioner of Internal Revenue, supra.

We are not unmindful of the decision recently rendered by the Court of Appeals for the Fifth Circuit in a similar case, United States v. Bond, 1958, 258 F.2d 577, which holds contrary to this opinion. We agree, however, with the dissenting opinion of Judge Wisdom in that case. In accord with our opinion are Haggard v. United States, 59–1 U.S. T.C. ¶ 9299 (D.C.Ariz.1959); and Knetsch v. United States, 58–2 U.S.T.C. ¶ 9935 (S.D.Calif.1958). And see Goodstein v. Commissioner of Internal Revenue, 1 Cir., 1959, 267 F.2d 127; Sonnabend v. Commissioner of Internal Revenue, 1 Cir., 1959, 267 F.2d 319.

The judgments will be affirmed.

relating to the internal revenue laws, shall be applied without retroactive ef-

fect." 53 Stat. 467 (1939), 26 U.S.C.A. (I.R.C.1939) § 3791(b).