Estates of M.H. and Maude Bennett, Deceased, Louise Ann Worthy, Administratrix v. Commissioner. Clyde E. Thomas, Jr., and Jane E. Thomas v. Commissioner.
Estates of Bennett v. Commissioner
Docket Nos. 75125, 75126.
United States Tax Court
T.C. Memo 1960-253; 1960 Tax Ct. Memo LEXIS 36; 19 T.C.M. (CCH) 1396; T.C.M. (RIA) 60253; November 29, 1960
*36 Held, interest deductions claimed by petitioners as having been paid on an "Annuity Loan Note and Assignment of Annuity Savings Bond" and which have been disallowed as deductions by the Commissioner are not deductible. The Commissioner is sustained. Knetsch v. United States, U.S. , decided November 14, 1960. Held, further, the situation is not changed by reason of the fact that the Commissioner had made a contrary ruling in a private letter to the president of the insurance company and which letter he subsequently revoked. Petitioners themselves had never asked nor received a ruling from the Commissioner as to the deductibility of such alleged interest payments. Weller v. Commissioner, 270 F. 2d 294, followed. Grover Cunningham, Jr., Esq., Elma Wasson Bldg., Big Spring, Tex. *37 , for the petitioners. Douglas M. Moore, Esq., for the respondent. BLACK Memorandum Opinion BLACK, Judge: The Commissioner has determined deficiencies in income tax and additions to tax under section 294(d)(2), Internal Revenue Code of 1939, as follows: Sec.
Docket No.
Petitioners
Year
Deficiency
294(d)(2)
75125
Estates of M.H. and Maude Bennett, Deceased, et al.
1953
$6,341.34
1954
3,406.54
1955
3,130.44
75126
Clyde E. Thomas, Jr., and Jane E. Thomas
1953
5,641.18
$461.64
1954
3,271.24
196.28
1955
1,299.55 The deficiencies are due to several adjustments. Some of these adjustments were not contested by petitioners; others were settled by agreement of the parties in the stipulations of facts which have been filed. The only issue which remains for our decision is whether the Commissioner erred in disallowing as deductions for interest paid certain payments which the petitioners made in each of the taxable years to the Sam Houston Life Insurance Company of Houston, Texas. The cases have been consolidated. All of the facts have been stipulated and are incorporated herein by this reference. They *38 may be summarized as follows: The petitioner, Louise Ann Worthy, is the duly qualified and acting administratrix with will annexed of both the estate of M. H. Bennett, deceased, and the estate of Maude Bennett, deceased. During the years 1953, 1954, and 1955, M. H. Bennett and Maude Bennett (hereinafter called the Bennetts) were husband and wife residing at Big Spring, Texas. During the same years Clyde E. Thomas, Jr., and Jane E. Thomas (hereinafter called the Thomases) were husband and wife residing at Big Spring, Texas. During said years M. H. Bennett and Clyde E. Thomas, Jr., were both physicians associated with the Howard County Hospital Foundation at Big Spring. The Bennetts and the Thomases, respectively, timely filed joint Federal income tax returns prepared on the cash basis of accounting for each of the years 1953, 1954, and 1955, with the district director of internal revenue at Dallas, Texas. On or about August 1, 1952, R. C. Salley, Houston, Texas, received a private letter ruling from the Commissioner that interest paid on money borrowed for partial payment of the premium on a single premium annuity contract was deductible as interest expense under section 23(b), *39 I.R.C. 1939. By letter dated November 23, 1953, the Commissioner advised Salley that the internal revenue service had received inquiries from other individuals referring to the letter ruling of August 1, 1952; that Salley apparently had circulated or caused same to be published; that revocation of the letter ruling of August 1, 1952, was then being considered; and that the Commissioner could not then advise of the extent to which any reliance upon which the letter ruling would be recognized. The private letter ruling of August 1, 1952, was never published by the Commissioner and was later specifically revoked, effective as to Salley on November 23, 1953. In December 1952, agents of the Sam Houston Life Insurance Company (hereinafter referred to as the Company), of which Salley was president, contacted both the Bennetts and the Thomases and attempted to sell an annuity savings bond to each couple on credit. The agents represented to each of the petitioners that by purchasing a single premium annuity from the Company with funds loaned for that purpose by the Company, the petitioners could convert into a capital asset funds they otherwise could be compelled to pay out on Federal income *40 taxes. The agents further represented that, although the rate of interest on the loan to buy the annuity savings bond would be greater than the annual increase in the guaranteed cash value of the annuity savings bond during the first 8 years, the petitioners by deducting the interest paid on the loan from their otherwise taxable income would actually realize profits on the transaction. The agents also represented that during the ninth and succeeding years the annual increase in the guaranteed cash value of the annuity savings bond would exceed the interest paid on the initial loan, exclusive of any interest paid on borrowings against increases in guaranteed cash value. In making the aforesaid sales presentation, the agents of the Company exhibited both to the Bennetts and to the Thomases a copy of the private letter ruling of August 1, 1952, but did not exhibit a copy of the letter of November 23, 1953, or otherwise advise the petitioners that the Commissioner was then considering the revocation of the private letter ruling of August 1, 1952. On January 1, 1953, the Bennetts and the Thomases each purchased an annuity savings bond from the Company for a recited consideration of *41 $200,000 each. At the same time the Bennetts and the Thomases each executed and delivered to the Company an "Annuity Loan Note and Assignment of Annuity Savings Bond" in the amount of $200,000. M. H. Bennett was named as the annuitant of one such annuity savings bond and Clyde E. Thomas, Jr., was named as the annuitant of the other. These annuity savings bonds each recited: (a) That it was being issued in consideration of the payment in advance of a single premium of $200,000 of which $200 was paid in cash and the remainder by execution of a contract loan agreement for $199,800. (b) That the guaranteed cash value of such bond on the thirtieth anniversary thereof, i.e., January 1, 1983, was $419,400. (c) That if the annuitant was living on said thirtieth anniversary date and the contract was still in force, each annuitant would, commencing on said thirtieth anniversary, receive a specific monthly annuity for his life. (d) That if the annuitant died after the first such monthly annuity payment became due but before the total monthly annuity payments made to him had aggregated the guaranteed cash value, the Company would continue to pay such monthly annuity payments to the beneficiary *42 designated by the annuitant until the total such monthly payments made both to the annuitant and his beneficiary equaled the guaranteed cash value of the annuity savings bond. (e) That if the annuitant died before the thirtieth anniversary of the bond but while the contract was still in force, the Company would pay to the beneficiary designated by the annuitant or to the annuitant's estate the then cash value of the contract, less any arrearage in payments by the annuitant. (f) The annuitant was authorized at any time after the first anniversary date of the contract to surrender same for its then "Net Cash Value," i.e., the cash value of the contract less any arrearage in payments by the annuitant. (g) The cash value of each contract per $1,000 of initial premium was to be as follows: End of
Cash or
Contract
Loan
Year
Value
1
$1,025
2
1,051
3
1,077
4
1,104
5
1,131
6
1,160
7
1,189
8
1,218
9
1,249
10
1,280
11
$1,312
12
1,345
13
1,379
14
1,413
15
1,448
16
1,485
17
1,522
18
1,560
19
1,599
20
1,639
21
$1,680
22
1,722
23
1,765
24
1,809
25
1,854
26
$1,900
27
1,948
28
1,996
29
2,046
30
2,097
(h) The increase *43 in cash value was to be calculated on the basis of 2 1/2 per cent per annum interest compounded annually. (i) The annuitant was to be allowed to draw against the "Net Cash Value" of contract at any time, the rate of interest on any such withdrawals was not to exceed 5 per cent per annum for the first contract year and 3 per cent per annum thereafter. (j) All premiums or loan interest payments were to be due and payable in advance at Houston. Each annuity contract was to terminate if any loan interest was not paid within 31 days of its due date but the annuitant during his lifetime was entitled to reinstate the contract within 5 years of any such termination by paying any such arrearage plus a further sum calculated at 4 per cent per annum compounded annually on any such arrearage. The "Annuity Loan Note and Assignment of Annuity Savings Bond" executed by the Bennetts and by the Thomases each recited as follows: IN CONSIDERATION OF the sum of Two Hundred Thousand DOLLARS advanced by SAM HOUSTON LIFE INSURANCE COMPANY of Houston, Texas, which sum the Company is hereby authorized and directed to apply to pay the remaining premiums required by the terms of said Annuity Savings *44 Bond, and receipt whereof is hereby acknowledged, as a loan on the sole security of and in accordance with the provisions contained in Annuity Savings Bond Number * * * on the life of * * * issued by the said Company, I hereby assign said Annuity Savings Bond and all sums of money now due or hereafter to become due thereunder, including benefits at death, to said Company as security for the repayment of the said loan and interest thereof. Interest shall be payable in advance at the rate and at the time and in the manner provided in the said Annuity Savings Bond. It is agreed that any interest which is not paid when due shall be added to the principal of the loan, and shall become a part thereof and shall bear interest at the same rate and on the same conditions as the loan. It is also agreed that the principal of the said loan together with any interest due and accrued thereon shall become due and payable whenever the said Annuity Savings Bond shall become due and payable, or whenever the total indebtedness on said Annuity Savings Bond shall equal or exceed the guaranteed cash value of the said Annuity Savings Bond. If at any time the entire indebtedness evidenced by this loan, *45 together with any other indebtedness on said Annuity Savings Bond, shall equal or exceed the guaranteed cash value of the said Annuity Savings Bond, the Company's liability under the said Annuity Savings Bond shall automatically terminate. If the said Annuity Savings Bond shall lapse or become forfeited in any manner, the amount of the said loan with any interest accumulated or accrued thereon shall be deducted from any cash surrender value of said Annuity Savings Bond as provided in the Cash Values privilege of said Annuity Savings Bond. * * *
It is understood that there is no personal liability upon the makers of this note for the payment thereof, the sole recourse being against the said Annuity Savings Bond. Each of the aforesaid annuity savings bonds and annuity loan notes referred respectively to each other and each pair were intended to be and were integrated documents. Although each of the aforesaid bonds recited that it was issued in consideration of $200 cash and execution of a contract loan agreement for $199,800, neither the Bennetts nor the Thomases did in fact pay $200 in cash at that time but each couple executed an annuity loan note for the entire $200,000. *46 At the time the annuity savings bonds were purchased, M. H. Bennett was almost 58 years of age and Clyde E. Thomas, Jr., was 39 years of age. Neither the Bennetts nor the Thomases made any cash payments to the Company until December 31, 1953, when each couple paid the sum of $10,000, 5 per cent of $200,000. Shortly after January 1, 1954, the Bennetts and the Thomases each received from the Company the sum of $4,900, i.e., all but $100 of the amount by which the guaranteed cash value of each annuity savings bond increased at the end of the first contract year. On December 23, 1954, the Bennetts and the Thomases each paid the Company $6,147, i.e., 3 per cent of $204,900, plus the additional sum of $157.61 as a penalty for late payment. Shortly after January 1, 1955, the Bennetts and the Thomases each received from the Company the sum of $5,200, the amount by which the guaranteed cash value of each annuity savings bond increased during the second year of the said contracts. During 1955, the Bennetts and the Thomases each paid the Company $6,303.10, i.e., 3 per cent of $210,100, plus the additional sum of $153.84 as a penalty for late payment. Shortly after January 1, 1956, the *47 Bennetts and the Thomases each received from the Company the sum of $5,400, the amount by which the guaranteed cash value of each annuity savings bond increased during the third year of the said contracts. On the joint Federal income tax returns they filed for the calendar years 1953, 1954, and 1955, the Bennetts and the Thomases claimed deductions for interest paid to the Company as follows: The Bennetts: Year
Interest Claimed
1953
$10,000.00
1954
6,304.61
1955
6,456.84
The Thomases: 1953
10,000.00
1954
6,304.61
1955
6,153.84
After 1957, the Thomases ceased to make any further payments to the Company and forfeited any rights under the annuity savings bond. The Bennetts and the Thomases each bought the instant annuity savings bonds because they believed the annual payments they would make to the Company would constitute deductible interest for Federal income tax purposes. Had they not believed the annual payments to be so deductible they would not have purchased the instant annuity savings bonds. At no time did either the Bennetts or the Thomases request the Commissioner to issue a ruling concerning the deductibility of the sums *48 they paid to the Company. The sole published ruling of the Commissioner dealing with the type of transactions here in issue is Rev. Rul. 54-94 (1954-1 C.B. 53) in which it is determined that payments analogous to those here in issue are not deductible for Federal income tax purposes. In these consolidated proceedings there is but one issue to decide. In each of the taxable years the Bennetts and the Thomases took deductions for amounts which they paid the Company. They took these deductions as interest paid. The nature of the payments has been fully described in our above summarization of the facts. The precise issue which is involved here was involved in Knetsch v. United States, 272 F. 2d 200. That issue was decided in favor of the United States. The Supreme Court granted a writ of certiorari, 361 U.S. 958. On November 14, 1960, the Court rendered its opinion. That opinion affirmed the Ninth Circuit in the Knetsch case, - U.S. -. So far as we can see the facts with reference to the "Annuity Savings Bond" and the "Annuity Loan Note and Assignment of Annuity Savings Bond" are essentially the same in the instant case as in the Knetsch case. *49 It was with the Sam Houston Life Insurance Company of Houston, Texas, that Knetsch dealt, as in the instant case. We must, therefore, follow the decision of the Supreme Court in the Knetsch case, unless the situation here is changed on account of the fact that there is present here a letter from the Commissioner of Internal Revenue to another taxpayer making a ruling that such payments as are here in controversy were deductible as interest. Petitioners in the instant case allege that one of the reasons why their claimed interest deductions should be allowed was the following: That one R. C. Salley, on August 1, 1952 received a letter ruling from the Commissioner of Internal Revenue to the effect that in computing their income, deductions would be allowed of all interest paid or accrued in the taxable year on indebtedness created to purchase single premium annuity contracts identical to the one in question herein and that interest actually paid within the taxable year on such a loan would constitute an allowable deduction under Section 23(b) of the Internal Revenue Code of 1939 as amended, for federal income tax purposes. The facts with reference to this Salley letter from the Commissioner *50 have been stipulated and embodied in our summarization of the facts herein. We do not think these facts are sufficient to establish petitioners' right to the interest deductions claimed. We think that this is especially true when it is stipulated that at no time did either the Bennetts or the Thomases request the Commissioner to issue a ruling concerning the deductibility of the sums they paid to the Company. The Supreme Court in its opinion did not pass on this particular question. In the concluding part of its opinion the Court said: Some point is made in an amicus curiae brief of the fact that Knetsch in entering into these annuity agreements relied on individual ruling letters issued by the Commissioner to other taxpayers. This argument has never been advanced by petitioners in this case. Accordingly, we have no reason to pass upon it. While it is true, therefore, that the Supreme Court in the Knetsch case did not pass upon the question as to what the effect would be where a taxpayer purchasing these annuity contracts relied on private letter ruling to taxpayers other than the one involved here, nevertheless it is true that the Third Circuit did pass upon such an issue in *51 Weller v. Commissioner, 270 F. 2d 294. In that case the court held that it was not an abuse of discretion of the Commissioner to retroactively change his practice established by a series of individual rulings and where taxpayer was treated in the same manner as all other taxpayers similarly situated, that is, without ruling, they were entitled to no more. Said the court in making this ruling: We need not determine whether such action if carried out would be an abuse of discretion, for petitioners are not in the same position as those parties who have been issued rulings. They are entitled to the same treatment as all other taxpayers similarly situated, i.e., without rulings, no more and no less. This the Commissioner has afforded them. See also Pomeroy Cooperative Grain Co., 31 T.C. 674 and Jesse Hartman, 34 T.C. - (Sept. 22, 1960). We, therefore, hold against petitioners as to this contention. For reasons stated in the foregoing we sustain the Commissioner in his disallowance of the interest deductions claimed in each of the taxable years. During the course of the trial of these proceedings it was agreed between the parties that if the Commissioner *52 prevailed on the interest issue, petitioners in Docket No. 75126 are liable for section 294(d)(2) additions to tax for the years 1953 and 1954. Effect will be given to this agreement in a recomputation under Rule 50. Decisions will be entered under Rule 50.