Martin Weiner and Tillie Weiner v. Commissioner.
Weiner v. Commissioner
Docket No. 86840.
United States Tax Court
T.C. Memo 1962-44; 1962 Tax Ct. Memo LEXIS 263; 21 T.C.M. (CCH) 252; T.C.M. (RIA) 62044; March 1, 1962
*263 The petitioner owned a controlling interest in a corporation and held its demand note. He transferred such note to a factoring company and received therefor the remaining unpaid principal amount of the note, less a factor's commission. The petitioner and the factor agreed that the factor would not demand payment before 90 days. At the time of the transfer the debtor was financially able to pay the note, or at least the petitioner has not shown otherwise. Held, that the transaction constituted a collection of the note by petitioner from the debtor through the factor as a conduit and that the petitioner's gain was not long-term capital gain. Conrad N. Hilton, 13 T.C. 623, followed. Benjamin Nadel, CPA, 1457 Broadway, New York, N. Y., AND Norman Nadel, Esq., for the petitioners. William F. Fallon, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax in the amount of $28,946.14 for the taxable year 1955. The issue is whether the amount of $60,899.00 received by petitioner upon the transfer of a demand promissory note constituted ordinary income or long-term capital gain. One other issue raised by the pleadings has been settled by stipulation and adjustment will be made under Rule 50. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioners are husband and wife residing in Paterson, New Jersey. They filed a joint Federal income tax return for the taxable year 1955 with the district director of internal revenue at Newark, New Jersey. Martin Weiner will hereinafter be referred to as the petitioner. Regency Textiles, Inc., a New York Corporation, hereinafter referred to as Regency, was engaged in business as a *265 converter of higher-priced printed fabrics. The Martin Weiner Corporation, a corporation wholly owned by petitioner, was engaged in business as a converter of lower-priced printed fabrics. By agreement dated June 10, 1952, the petitioner acquired from Sidney C. Ross, for a consideration of $1, all the outstanding stock of Regency, consisting of 100 shares of common stock without par value, together with a note made by Regency dated October 1, 1951, payable to the order of Ross, on demand, in the amount of $73,250. Such note did not provide for the payment of interest. The promissory note, the principal of which had been reduced to $60,900 by payments from Regency to Ross, was endorsed by Ross "without recourse in any event" and was delivered together with the certificates of stock to petitioner. The balance sheet of Regency attached to the agreement of June 10, 1952, showed, as of May 28, 1952, total assets of $100,278, total liabilities of $120,386, including the note in question, and capital stock of $150,000. The 100 shares of capital stock of Regency which petitioner acquired on June 10, 1952, were then transferred by him to the Martin Weiner Corporation. On or about June 10, 1952, Sidney *266 C. Fried and Jess Weiner, brother of the petitioner, both of whom were employees of Martin Weiner Corporation, became employees of Regency, Fried being secretary-treasurer and Jess Weiner being sales manager. On July 15, 1952, Regency issued an additional 20 shares of no par value capital stock to the Martin Weiner Corporation thereby increasing its outstanding capital stock to 120 shares, and also on this date the Martin Weiner Corporation transferred 20 of its shares of Regency stock to Sidney C. Fried and 45 shares to Jess Weiner. Martin Weiner Corporation continued to be the owner of the remaining 55 shares. On July 1, 1954, Regency issued a new demand promissory note for $60,900 to the order of petitioner, providing for interest at 5 percent, in place of the note to the order of Sidney C. Ross dated October 1, 1951. Regency paid interest to petitioner on this new promissory note for the period from July 1, 1954 to January 17, 1955. On January 12, 1955, petitioner wrote a letter to Emanuel P. Lewis, a vice president of James Talcott, Inc., a corporation engaged in the factoring business, in which he stated: Pursuant to our phone conversation, I am enclosing herewith note *267 of Regency Textiles, in the sum of $60,900.00, bearing 5% interest, payable quarterly, which you have agreed to purchase without recourse. Thanking you for this accommodation, I am * * *
In the business files of James Talcott, Inc., under the heading "Martin Weiner Personal Account" there was included a memorandum dated January 14, 1955, in which it was stated: E. P. Lewis agreed with Mr. Weiner to discount a note made by Regency Textile Inc. dated July 1, 1954 for $60,900. In accordance with the agreement, we will send Mr. Weiner a sum in that amount on January 17. This note will be put in for collection 90 days from that date and Mr. Weiner will be notified five days prior to maturity regarding the pending collection. We are to charge a factoring commission of 1/2% and interest is to be at 5% per annum, payable quarterly. On January 18, 1955, petitioner transferred the July 1, 1954 demand promissory note of Regency, by delivery and by endorsement without recourse, to James Talcott, Inc., and received from that company $60,595.50. James Talcott, Inc. was not chartered as a bank. Its factoring business included the purchase of notes in large aggregate amounts. The notes *268 which it customarily purchased generally represented payment for merchandise purchased, but the company also purchased notes from officers of corporations. Acquisition of the demand promissory note of Regency by James Talcott, Inc., was in the usual course of its business. On April 13, 1955, Regency, on demand from James Talcott, Inc., paid the note in the amount of $60,900 and interest of $761.25. Regency's bank account showed cash in bank on December 31, 1954 in the amount of $174,180.69. It showed deposits from January 1 to January 18, 1955 totaling $73,046.33, checks cleared in that period totaling $71,383.16, and a balance in the account on January 18, 1955 of $175,843.86. It is stipulated that the cash disbursements book of Regency shows disbursements totaling $213,848.70 from January 1, 1955 to January 18, 1955. The balance sheets of Regency, taken from its books and records, are as follows on the dates indicated: BALANCE SHEETS OF REGENCY TEXTILES, INC.
Assets
5/28/52
6/30/52
6/30/53
6/30/54
12/31/54
6/30/55
Cash
$ 2,371.00
$147,814.00
$164,184.00
$275,681.00
$177,836.00
$ 51,541.00
Accounts Receivable
2,090.00
234,404.00
242,598.00
230,297.00
300,658.00
Due from Factor (J. Tal-
cott, Inc.)
6,719.00
44,178.00
86,014.00
56,596.00
94,214.00
Inventory
64,929.00
85,027.00
306,540.00
79,273.00
13,595.00
208,529.00
Fixed Assets
20,726.00
20,350.00
15,286.00
1,125.00
Loans, Receivable, etc.
12,252.00
11,750.00
6,550.00
1,461.00
Total Assets
$100,278.00
$273,750.00
$771,142.00
$686,152.00
$478,324.00
$654,942.00
Liabilities
Accrued Expenses
$ 4,607.00
$ 3,386.00
$ 24,965.00
$ 15,907.00
$8,490.00
$ 28,688.00
Accounts Payable
54,879.00
41,421.00
302,736.00
148,988.00
229,505.00
436,173.00
Notes Payable
201,339.00
300,103.00
300,000.00
Notes Payable
60,900.00
60,900.00
60,900.00
60,900.00
60,900.00
Total Liabilities
$120,386.00
$307,046.00
$688,704.00
$525,795.00
$298,895.00
$464,861.00
Net Worth
Capital Stock
$150,000.00
$150,000.00
$150,000.00
$150,000.00
$150,000.00
$150,000.00
Surplus
10,357.00
29,429.00
40,081.00
Deficit
170,108.00
183,296.00
67,562.00
*269 The demand promissory note to the order of Sidney C. Ross appeared on the books of Regency as a liability and was reflected in the balance sheets included in its Federal income tax returns. The same was true of the promissory note given by Regency to the petitioner. The petitioner was not engaged in the business of dealing in notes and other securities. The petitioners in their joint income tax return for the taxable year 1955 reported that petitioner had received wages of $5,000 as an employee of Regency. Therein they reported in the schedule of long-term capital gains and losses that the demand promissory note of Regency was purchased in 1952 at a cost of $1; that it was sold on January 18, 1955, for $60,900; and that there was a resulting long-term capital gain of $60,899. Therein the petitioners claimed as an interest deduction the amount of $304.50, representing the difference between the face amount of the note and the amount petitioner received from James Talcott, Inc.
The respondent in the notice of deficiency increased taxable income by the amount of $30,449.50, stating that: It has been determined that you realized ordinary income in the amount of $60,899.00 from *270 a transaction purportedly relating to a disposition of a promissory note of Regency Textiles, Inc. In your return the transaction was reported as a long-term capital gain of $60,899.00. The transfer by the petitioner of the note of Regency to James Talcott, Inc., for $60,595.50, did not constitute a sale of the note but a collection thereof by the petitioner from Regency through James Talcott, Inc., as a conduit. Opinion There appears to be no question between the parties that the note in the petitioner's hands represented a capital asset within the definition contained in section 1221 of the Internal Revenue Code of 1954. Nor is there any question that had the petitioner surrendered the note to Regency, the debtor, and received payment therefor directly, the full amount of the gain would be taxable as ordinary income, since in such case there would have been no sale or exchange of the capital asset. [1]Fairbanks v. United States, 306 U.S. 436. *271 Here, however, the petitioner transferred the note to a factor, James Talcott, Inc., and received the remaining balance of principal due, less, however, a factor's commission of one-half percent, and it is contended by the petitioner that this constituted a bona fide sale, with the result that the gain derived is long-term capital gain under section 1222(3) of the Internal Revenue Code of 1954. The respondent contends that the purported sale should be disregarded since the substance of the transaction was a payment of the note by Regency to the petitioner through the factor as a conduit, and that the gain must be treated as ordinary income. Both parties cite Conrad N. Hilton, 13 T.C. 623. In the Hilton case the taxpayer owned all the stock, except qualifying shares, of a hotel company, and held an interest-bearing debenture note of the company in the face amount of $250,000. The note called for payments each month of all the company's net income in reduction of the note. Actually the company had no regular plan for repayment; payments depended upon its financial condition and the taxpayer's need for money. By 1944 the unpaid balance of the *272 note was $175,000. In that year the taxpayer needed funds to purchase another hotel. He was advised that if he could sell the note the profit would be taxed as capital gain, whereas if he received payment from the company the income would be taxable as ordinary income. He therefore offered to sell the note to a bank, stating that the company could pay $50,000 and make payments of $5,000 per month. The bank advised that under its legal limitations it could lend no more than $100,000 and that the note would have to be reduced by $75,000 before it could be purchased by the bank. The taxpayer advised that the hotel company could pay $75,000, and endorsed and sent the note to the bank. Upon the bank's request, the hotel company prepared a new demand note for $75,000 and one for $100,000 due in one year, payable $5,000 per month, both payable to the bank. The taxpayer advised the bank that the company would pay the $75,000 note when the bank desired it. The company also prepared a new note for $175,000 to the taxpayer which he assigned to the bank, endorsed with recourse. Thereupon the bank credited the taxpayer's account with $175,000 and the taxpayer instructed the hotel company to pay *273 the $75,000 demand note. Five days later the hotel company paid the bank $75,000 in satisfaction of that amount of the note. The hotel company was not financially able to pay in 1944 the entire amount of $175,000. In that case we relied upon the basic principle that the incidence of taxation depends upon the substance of a transaction ( Commissioner v. Court Holding Co., 324 U.S. 331) and held that the substance of the transaction was a sale of the note to the extent of $100,000, but a payment thereof by the hotel company to the taxpayer to the extent of $75,000. With respect to the latter amount, we took the position that the devious route taken by the taxpayer to obtain payment of the note has the same tax effect as if he had followed a direct route. ( Minnesota Tea Co. v. Helvering, 302 U.S. 609). In the instant case the transaction took the form of a sale. The note was endorsed and delivered to the James Talcott Company. E. P. Lewis, a representative of the James Talcott Company, testified that he purchased the note on behalf of that company; that since the note was assigned without recourse he must have relied upon the credit of the debtor, Regency; *274 that the Talcott Company was in the factoring business, and not the banking business; that this transaction was done in the regular course of business of the factoring company; and that it was not unusual to buy notes from corporate officers. On the other hand, since this was a demand note, the petitioner had the right to make demand for payment at any time prior to the date of transfer. He dominated the debtor, Regency, and was in a position to have it do his will. Furthermore, insofar as the record shows, Regency was financially able to pay the note on demand on January 18, 1955, or prior thereto. The petitioner argues to the contrary, stating that at January 18, it had available cash of only $36,533.76. Regency's bank account showed cash in the bank on December 31, 1954 in the amount of $174,180.69, deposits between January 1 and January 18, 1955 of $73,046.33, checks cleared in that period in the amount of $71,383.16, and a balance in the account on January 18 of $175,843.86. It was stipulated that the cash disbursement book of Regency shows disbursements totaling $213,848.70 from January 1 to January 18, and it may well be that there were outstanding uncleared checks resulting *275 in a true balance in the account of an amount approximating that claimed by the petitioner. However, we think this is not determinative. We note that as of December 31, 1954, Regency had an account receivable of $56,596 due from James Talcott, Inc. and there is no showing that this was not collectible on demand, nor is it shown that the note could not have been paid prior to January 18, in preference to the making of other expenditures. Such evidence as we have is strongly indicative that at January 18 or prior thereto Regency was in a financial position to pay the note. In any event the petitioner, upon whom rests the burden of proof, has not shown that it was not. Although the note was a demand note, the agreement between petitioner and James Talcott, Inc. was that the latter would not demand payment for 90 days. There is no explanation of this agreement, and no showing that it was because of inability of Regency to pay. Indeed there is no showing of any reason for the sale of the note to James Talcott, Inc., and we can perceive no financial advantage to the petitioner other than that which would result from qualifying the gain as long-term capital gain for tax purposes. Actually, *276 except for possible tax benefit, the transaction was to his financial disadvantage. Had he collected from the debtor he would have received the full amount due on the note, whereas by the means employed he received $304.50 less, representing the factor's commission, and Regency, which was substantially his company, paid to the factor interest of $761.25 during the period the note was held by the factor. We recognize, of course, that a taxpayer has the legal right to decrease the amount of his taxes or altogether avoid them by means which the law permits. Gregory v. Helvering, 293 U.S. 465, and Weller v. Commissioner ( C.A. 3), 270 F. 2d 294, certiorari denied 364 U.S. 908, affirming 31 T.C. 33 and 31 T.C. 26. But where a sale is made for the purpose of minimizing taxes, the transaction must be carefully scrutinized to determine whether there was a bona fide sale, or whether the substance of the transaction was something different. Gregory v. Helvering, supra; Weller v. Commissioner, supra; and Clara M. Tully Trust, 1 T.C. 611. See also Helvering v. Clifford 309 U.S. 331. *277 It is our conclusion that the transaction in question was one by which the petitioner, acting on behalf of himself and as a representative of Regency, accomplished a payment of the note to himself through the medium of James Talcott, Inc. as a conduit. This case falls within our holding with respect to the $75,000 portion of the note involved in Conrad N. Hilton, supra. The fact that in the instant case the note was assigned without recourse, whereas in the Hilton case the assignment was with recourse is not, in our opinion, significant in view of the facts of the instant case. Here the factor was apparently taking no substantial risk in taking the note without recourse since at the date of the transfer it may have been indebted to Regency in a substantial amount. We note that at December 31, 1954, its obligation to Regency was $56,596 and that at June 30, 1955, it owed Regency $94,214. We have carefully examined the cases of Estate of Clarence E. Lehr, 18 T.C. 373, and F. Rodney Paine, 23 T.C. 391, reversed (C.A. 8), 236 F. 2d 398, which are also relied upon by the petitioner, in which we held that transfers of notes prior to *278 maturity for the purpose of tax minimization constituted valid sales thereof. However, each case must be decided upon the basis of its own facts and circumstances. In neither of those cases did the facts indicate, as they do here, a transaction which was in substance a payment of the notes by the debtor to the taxpayer. The respondent advances the further contention that even if the transaction constituted a bona fide sale, it would not accomplish the conversion of what would otherwise be ordinary income into capital gain, citing such cases as Commissioner v. Lake, Inc., 356 U.S. 260, and Arnfeld v. United States ( Ct. Cls.), 163 F. Supp. 865. In view of our conclusion set forth above it is unnecessary to decide that question, but it may be observed that those cases did not involve gain from the sale of capital assets, but, rather, the sale of rights to receive ordinary income. The instant case does not involve interest or similar ordinary income. We hold that the gain upon the transaction did not constitute long-term capital gain. While the respondent included in petitioner's income the full amount of the principal of the note, $60,900, whereas the petitioner *279 received from James Talcott, Inc. only $60,595.50, the respondent has not disallowed the petitioner's claimed deduction of the difference of $304.50. Decision will be entered under Rule 50. Footnotes
1. Section 1232 of the Internal Revenue Code of 1954 provides in part: (a) General Rule. - For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof - (1) Retirement. - Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954.)↩